**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| JOHN D. LITTLE, ) | CASE NO. 1:13-CV-1047 |
| ) | |
| Plaintiff, ) | JUDGE GAUGHAN |
| ) | |
| v. ) | MAGISTRATE JUDGE |
| ) | VECCHIARELLI |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner ) | |
| of Social Security, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Defendant. ) | |

Plaintiff, John D. Little ("Plaintiff"), challenges the final decision of Defendant, Carolyn W. Colvin, Acting Commissioner of Social Security ("Commissioner"), denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"), 42 U.S.C. §§ 423, 1381(a). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

### I. PROCEDURAL HISTORY

On February 16, 2010, Plaintiff filed an application for SSI, alleging a disability onset date of June 15, 2004. (Transcript ("Tr.") 12.) The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an administrative law judge ("ALJ"). (*Id*.) On November 1, 2011, an ALJ held Plaintiff's hearing. (*Id*.) Plaintiff appeared, was represented by an attorney, and testified. (*Id*.) A vocational expert also testified. (*Id*.) On January 6, 2012, the ALJ found that Plaintiff was not

disabled. (Tr. 10.) On March 15, 2013, the Appeals Council declined to review the ALJ's decision, making it the Commissioner's final decision. (Tr. 1.)

On May 8, 2013, Plaintiff filed his complaint to challenge the Commissioner's final decision. (Doc. No. 1.) The parties have completed briefing in this matter. (Doc. Nos. 14, 15.)

Plaintiff asserts the following assignments of error: (1) The ALJ erred by improperly evaluating the opinions of Plaintiff's treating physicians; and (2) the ALJ erred by failing to conduct a proper pain and credibility analysis.

## II. EVIDENCE

### A. Personal and Vocational Evidence

Plaintiff was born in September 1960 and was 49-years-old on the date he filed his application for disability. (Tr. 35.) He had a limited education and was able to communicate in English. (*Id.*) He had past relevant work as a parts trimmer and a roofer. (*Id.*)

### B. Medical Evidence[1]

#### 1. Medical Reports

On November 13, 2007, Plaintiff complained of back pain with shooting pain down his left bilateral extremity. (Tr. 296.) On February 9, 2008, Bryan Kaufman, M.D., performed an MRI to address Plaintiff's lower back pain. (Tr. 299.) The MRI showed

---

[1] Although Plaintiff's record contains some evidence of a mental impairment, the ALJ concluded that Plaintiff does not have a severe mental impairment. (Tr. 32.) Plaintiff does not challenge this conclusion in his Brief. As a result, the following discussion of the medical evidence addresses only that evidence which relates to Plaintiff's physical condition.

degenerative changes with effacement of the perineural fat at the L5-S1 neural foramina bilaterally and a bulging annulus with a left paramedian disc prelapse at L4-5 resulting in narrowing of the left lateral recess. (*Id.*) No other compromise of the foramina were noted. (Tr. 299.) Another MRI of Plaintiff's lumbar spine performed on April 1, 2009, showed end plate sclerosis and spur formation, a reversal of the normal lumbar lordosis, and narrowing of L5-S1 disc space. (Tr. 276.)

On May 3, 2010, Plaintiff saw Harold Slocum, M.D., with complaints of chronic diffuse low back pain. (Tr. 385.) Plaintiff reported having used Percocet and Lorcet in the past, which helped his pain, but he did not report how often or how long he used the medications or where he obtained them. (*Id.*) On examination, Plaintiff showed chronic pain demeanor and motion. (*Id.*) Plaintiff complained of pain in the lumbar back and laterally on both sides and into the posterior thighs on both sides. (*Id.*) Plaintiff was referred for an MRI and physical therapy. (*Id.*) Dr. Slocum prescribed Prednisone, Parafon, and Vicodin. (*Id.*)

On June 24, 2010, an MRI of Plaintiff's lumbar spine showed degenerative disc changes in the lower lumbar spine with a small focal paracentric disc herniation minimally eccentric to the right at the L5-S1 level, bilateral foraminal stenosis at L5-S1 level, and a focal disc protrusion to the left at L4-L5 level. (Tr. 372-373.)

On July 10, 2010, Plaintiff saw Dr. Slocum with complaints of worsening back pain that had not improved with Vicodin. (Tr. 384.) Dr. Slocum noted that Plaintiff reported tenderness to palpation and restricted range of motion, but his strength was good throughout and he had good-to-athletic muscle tone. (*Id.*) Dr. Slocum's

3

assessment included chronic low back pain, diffuse, no focal pain or findings; and chronic narcotic use, as Plaintiff requested Oxycontin because he claimed that Vicodin and Percocet did not help. (*Id.*) Dr. Slocum refused to prescribe a second narcotic in addition to a recent phone refill. (*Id.*) He suggested that Plaintiff undergo physical therapy, but Plaintiff expressed no interest because it "didn't help before." (*Id.*) Dr. Slocum also noted that Plaintiff had chronic narcotic use, "apparently as high dose and frequent as possible with no clear PE or MRI support for use." (*Id.*) Dr. Slocum completed Medicaid forms on behalf of Plaintiff, noting that Plaintiff could stand/walk for zero hours in an eight-hour day; sit for a total of 30 minutes in an eight-hour day; lift and carry up to five pounds; and was markedly limited in pushing/pulling, bending, reaching, and handling, and moderately limited in repetitive foot movements. (Tr. 389.)

On July 30, 2010, Plaintiff began treating with Domingo Gonzalez, M.D. (Tr. 365-366.) Plaintiff reported that he began having problems with his lumbar spine in 2004 when he was involved in an automobile accident. (Tr. 365.) He told Dr. Gonzalez that he had been taking Vicodin and Percocet, but that it had not worked. (*Id.*) An examination of Plaintiff's lumbar spine presented no spinal deviation, and palpation fo the sacroiliac joint was unremarkable. (*Id.*) Dr. Gonzalez noted that there was a severe limitation for flexion, extension, and lateral bending after a few degrees with lumbar pain. (*Id.*) He also reported that Plaintiff was able to stand on his toes and heels with no difficulties, his strength was normal through the four extremities, and his coordination was normal. (*Id.*) Dr. Gonzalez's impression included lumbar pain secondary to degenerative changes of the lumbar spine, L5-S1 worse than L4-L5. (Tr.

4

366.) Dr. Gonzalez prescribed Embeda and Lortab for breakthrough pain and referred Plaintiff to pain management. (*Id.*) On August 2, 2010, Plaintiff returned his bottle of Embeda capsules, reporting that he was unable to tolerate them. (*Id.*) Dr. Gonzalez then prescribed OxyContin. (*Id.*)

Plaintiff saw Parshotam Gupta, M.D., a pain management specialist, monthly from July 30, 2010, through July 29, 2011, for his complaints of non-radiating low back pain. (Tr. 353-367, 391-404.) Dr. Gupta noted that "[p]ain medication helps," and that Plaintiff does not experience side effects from his medications. (Tr. 353, 391.) He also noted that Plaintiff smoked up to two packs of cigarettes per day. (*Id.*) On examination, Dr. Gupta noted mild tenderness and limited range of motion in Plaintiff's back, but reported that Plaintiff had normal strength and reflexes, intact cranial nerves, and mostly negative straight leg-raising tests. (Tr. 353-362, 365-366, 391-397.) Dr. Gupta diagnosed facet joint arthropathy at L4-5 and L5-S1, and L4-L5 herniated disk. (Tr. 353-360.) In 2011, Dr. Gupta diagnosed herniated nucleus pulposus at L5-S1 and lumbar spinal stenosis at L4-5 and L5-S1, but noted that Plaintiff's radicular pain had subsided. (Tr. 391-397.)

### 2. Agency Reports

On August 13, 2010, consultative examiner Marsha Cooper, M.D., performed a physical consultative examination on Plaintiff. (Tr. 319-326.) While Dr. Cooper found that Plaintiff's physical examination was unremarkable and that he was capable of working, she opined that Plaintiff's back condition would prevent him from returning to his prior work as a roofer. (Tr. 326.)

On January 31, 2011, state agency physician Steven McKee, M.D., reviewed Plaintiff's medical records and concluded that Plaintiff could occasionally climb ramps and stairs but never climb ladders, ropes or scaffolds; he could frequently balance; and he could occasionally stoop, kneel, crouch, or crawl.  (Tr. 377.)  Dr. McKee also opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk (with normal breaks) for a total of about six hours in and eight-hour workday; and sit (with normal breaks) for a total of about six hours in an eight-hour workday.  (Tr. 376.)

**C.     Hearing Testimony**

    **1.     Plaintiff's Testimony**

Plaintiff lives with his mother, who is disabled.  (Tr. 55.)  He helps her with the dishes and laundry and sometimes takes the garbage out or goes shopping.  (*Id.*)  He can lift up to 20 pounds and can do some walking.  (Tr. 55-56.)  He is able to drive a vehicle.  (Tr. 57.)

Plaintiff testified that he cannot work due to his back pain.  (Tr. 58.)  He indicated that he can sit for about 20 or 30 minutes, but it hurts him.  (*Id.*)  He can stand for about 20 or 30 minutes before having to shift positions.  (Tr. 60.)   He takes medication for his pain and sometimes receives injections, which relieve his pain for about three days.  (Tr. 59, 62.)  Plaintiff testified that his pain keeps him awake at night and he is therefore tired during the day.  (Tr. 61.)  He does not read, but watches the news on TV and understands most of it.  (Tr. 64.)  Sometimes he visits his son, who lives about 10-15 minutes away from Plaintiff.  (Tr. 66.)

6

### 2. VE Testimony

A vocational expert ("VE") testified at Plaintiff's hearing.  The ALJ asked the VE to assume a hypothetical individual with Plaintiff's education and work experience, who is able to perform work at a light level; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; frequently balance; occasionally stoop, kneel, crouch, and crawl; and must avoid all exposure to hazardous machinery and unprotected heights. (Tr. 71.)  The VE testified that the hypothetical individual would be able to perform jobs such as a small products assembler, a fast food worker, and a housekeeper/cleaner. (Tr. 72.)  The VE testified that the jobs named would remain even if the hypothetical individual was also limited to tasks that are simple and routine.  (Tr. 73.)

### III. STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when he establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered disabled when he cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 *and* 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) *and* 416.920(a)(4); *Abbott v. Sullivan,* 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate

that he is not currently engaged in "substantial gainful activity" at the time he seeks disability benefits. 20 C.F.R. §§ 404.1520(b) *and* 416.920(b).  Second, the claimant must show that he suffers from a "severe impairment" in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c) *and* 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot,* 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) *and* 416.920(d).  Fourth, if the claimant's impairment does not prevent him from doing his past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) *and* 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g)*,* 404.1560(c)*, and* 416.920(g).

### IV. SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since February 16, 2010, the application date.

2. The claimant has the following severe impairments: degenerative disc disease.

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

8

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: He can occasionally climb ramps and stairs and can never climb ladders, ropes, or scaffolds; he can frequently balance and occasionally stoop, kneel, crouch, or crawl; and he must avoid all exposure to hazardous machinery and unprotected heights.

5. The claimant is unable to perform any past relevant work.

6. The claimant was born in September 1960 and was 49-years-old, which is defined as a younger individual age 18-49, on the date the application was filed. The claimant subsequently changed age category to closely approaching advanced age.

7. The claimant has a limited education and is able to communicate in English.

8. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable jobs skills.

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

10. The claimant has not been under a disability, as defined in the Act, since February 16, 2010, the date the application was filed.

## LAW & ANALYSIS

### A. Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in

9

the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error

#### 1. The ALJ Erred by Improperly Evaluating the Opinions of Plaintiff's Treating Physicians.

Plaintiff argues that the ALJ violated the treating physician rule by failing to give controlling weight to the opinion of Dr. Slocum. According to Plaintiff, the ALJ's stated reason for rejecting Dr. Slocum's opinion was not legitimate. Furthermore, Plaintiff contends that the ALJ erred by failing to consider many of Dr. Gonzalez's medical records when weighing the evidence. For the following reasons, Plaintiff's arguments are not well taken.

"An ALJ must give the opinion of a treating source controlling weight if he finds

10

the opinion 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (internal quotes omitted). If an ALJ decides to give a treating source's opinion less than controlling weight, he must give "good reasons" for doing so that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight. *See Wilson*, 378 F.3d at 544 (quoting S.S.R. 96-2p, 1996 WL 374188, at *5 (S.S.A.)). This "clear elaboration requirement" is "imposed explicitly by the regulations," *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 400 (6th Cir. 2008), and its purpose is to "let claimants understand the disposition of their cases" and to allow for "meaningful review" of the ALJ's decision, *Wilson,* 378 F.3d at 544 (internal quotation marks omitted). Where an ALJ fails to explain his reasons for assigning a treating physician's opinion less than controlling weight, the error is not harmless and the appropriate remedy is remand. *Id*.

Here, the ALJ declined to give controlling weight to the July 2010 RFC opinion of Dr. Slocum. The ALJ explained:

> Little weight is given to the July 2010 opinion by Harold Slocum, MD, in which he limits claimant to far less than sedentary work. While he did treat the claimant, his opinion is not supported by the record or any objective findings. In fact, Dr. Slocum in his treating notes commented that there is no objective evidence to support the level of pain medication the claimant is on. Absent the longitudinal history, the unsupported opinion of Dr. Slocum cannot be given weight.

(Tr. 34.) The ALJ discussed why he did not find Plaintiff's allegations of pain to be fully credible. (*Id.*) The ALJ specifically indicated that Dr. Slocum "noted that the

11

claimant refused both physical therapy and a neurosurgery consult. He also noted that there is [sic] no clear objective findings to support the level of narcotic use by the claimant. (exh. 18F p2)." (*Id.*)

The ALJ did not err in declining to assign controlling weight to Dr. Slocum's opinion, because he gave good reasons for doing so and substantial evidence supports that conclusion. The ALJ acknowledged that Dr. Slocum treated Plaintiff, but nonetheless concluded that Dr. Slocum's opinion of Plaintiff's physical limitations was not supported by the record or objective findings and was inconsistent with Dr. Slocum's own treatment notes. (Tr. 34.) If this were all the ALJ had said about the evidence, the case could require remand.[2]

In this case, however, the ALJ's opinion, taken as a whole, thoroughly evaluates the evidence and indicates the weight the ALJ gave it. This provides a sufficient basis for the ALJ's rejection of Dr. Slocum's opinion, *see Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470-71 (6th Cir. 2006), and affords this Court the opportunity to meaningfully review the ALJ's opinion. In *Nelson*, the ALJ failed to discuss the opinions of two of the plaintiff's treating physicians, and the plaintiff argued that this failure constituted a basis for remand. The Sixth Circuit disagreed, concluding

---

[2] There is case law supporting the general proposition that an ALJ's broad statement rejecting a treating physician's opinion without giving specific reasons for rejecting it requires remand. See *Wilson,* 378 F.3d at 545 (finding that the ALJ's "summary dismissal" of the opinion of the claimant's treating physician failed to satisfy the "good reasons" requirement); *Friend v. Comm'r of Soc. Sec.,* 375 F. App'x 543, 552 (6th Cir. 2010) ("Put simply, it is not enough to dismiss the treating physician's opinion as incompatible with other evidence of record; there must be some effort to identify the specific discrepancies and to explain why it is the treating physician's conclusion that gets the short end of the stick.").

12

that "the ALJ's evaluation of [the plaintiff's] mental impairments indirectly attacks both the supportability of [the treating physicians'] opinions and the consistency of those opinions with the rest of the record evidence." 195 F. App'x at 470.  Because the ALJ's discussion of the other evidence "implicitly provided sufficient reasons for not giving . . . controlling weight" to the treating physicians, the Sixth Circuit concluded that the ALJ's decision satisfied the purposes of the controlling physician rule. *Id.* at 472.

In this case, the ALJ provided a discussion of the evidence before evaluating the RFC opinion of Dr. Slocum.  (Tr. 32-34.)  For example, the ALJ discussed the following evidence, which implicitly rejects Dr. Slocum's opinion regarding Plaintiff's physical limitations:

- The ALJ noted that Plaintiff "testified that he can stand or sit for only 20-30 minutes at a time, and could maybe lift 20 pounds." (Tr. 33.)  Dr. Slocum opined that Plaintiff could only sit for 30 minutes *total* in an eight-hour workday.  (Tr. 389.)  He also opined that Plaintiff could lift/carry up to five pounds.  (*Id.*)  Thus, Dr. Slocum's opinion conflicted with Plaintiff's description of his limitations.

- The ALJ noted that in April of 2009, Dr. Saghafi examined Plaintiff and found that his straight leg raising test was positive at 80 degrees and that an x-ray showed narrowing of the L5-S1 disc space.  (Tr. 33.)  Nonetheless, Dr. Saghafi concluded that Plaintiff could perform at least light work, including climbing stairs.  (*Id.*)

- Plaintiff appeared in no distress in August of 2010, and Dr. Gupta described Plaintiff's MRI findings as mild.  (*Id.*)  This was only one month after Dr. Slocum rendered his RFC opinion.

- A consultative examination by Dr. Cooper in August 2010 revealed that Plaintiff's range of motion was full, an x-ray showed no changes from previous radiology, and Plaintiff had a normal gait and did not require an assistive device.  (Tr. 34.)  Again, this was a month after Dr. Slocum's opinion.

- The ALJ noted that Dr. Slocum commented in his treatment notes that there is no objective evidence to support the level of narcotic use by Plaintiff.  (*Id.*)

13

- The ALJ noted that Plaintiff's level of activities was not consistent with his asserted physical limitations. (*Id.*) "[T]he record reveals that [Plaintiff] has the capacity to perform most activities of daily living, such as preparing meals, cleaning, shopping, doing laundry, driving, and getting out of the house to visit his son." (*Id.*) Dr. Slocum opined that Plaintiff could stand/walk for zero hours total in an eight-hour workday and sit for a total of a half hour in an eight-hour workday. (Tr. 389.) This is grossly inconsistent with Plaintiff's own testimony of his ability to perform daily activities. Dr. Slocum's opinion suggests that Plaintiff would have to be lying down for seven and a half hours of an eight-hour period.

Had the ALJ discussed the aforementioned evidence immediately after stating that he was rejecting Dr. Slocum's opinion, there would be no question that the ALJ provided "good reasons" for giving Dr. Slocum's opinion less than controlling weight. (Tr. 17.) The fact that the ALJ did not analyze the medical evidence for a second time (or refer to his previous analysis) when rejecting Dr. Slocum's opinion does not necessitate remand of Plaintiff's case. "No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989)). *See also Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) (When "remand would be an idle and useless formality," courts are not required to "convert judicial review of agency action into a ping-pong game.") (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766, n.6 (1969)). Accordingly, Plaintiff's argument that the ALJ violated the treating physician rule as to Dr. Slocum is without merit.

Plaintiff also contends that the ALJ erred by "barely discuss[ing] Dr. Gonzalez's

records." (Plaintiff's Brief ("Pl.'s Br.") at *[3]).  According to Plaintiff, the ALJ only briefly addressed Dr. Gonzalez's clinical findings, which Plaintiff argues support his allegations of pain and the physical limitations caused by his lower back problems.  Plaintiff's argument is not well taken, as an ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) (per curiam) (quoting *Loral Def. Sys.-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir.1999)).

Furthermore, it is well established that the "mere diagnosis" of a condition "says nothing" about its severity, or its effect on a claimant's ability to perform work. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).  Plaintiff notes that Dr. Gonzalez's records document that Plaintiff suffers from a herniated disc at L5-S1, lumbar spinal stenosis associated with tenderness, decreased range of motion, and stiffness with encroachment on the left L4 nerve root. (Pl.'s Br. at *, Tr. 391.)  Plaintiff has not, however, addressed any records from Dr. Gonzalez indicating not only that Plaintiff has diagnosed impairments and chronic pain, but also that he has associated functional limitations that could render him disabled.  Thus, the ALJ did not err by failing to thoroughly discuss Dr. Gonzalez's treatment notes; the fact that Dr. Gonzalez's treatment notes include diagnoses that support Plaintiff's allegations of chronic low back pain does not, alone, require the ALJ to include limitations specifically related to those diagnoses in Plaintiff's RFC.  Accordingly, Plaintiff has provided an inadequate basis to conclude that the ALJ erred by failing to throughly discuss the medical records

---

[3]   Plaintiff did not include page numbers in his Brief on the Merits.

of one of Plaintiff's treating physicians.

### 2. The ALJ Erred by Failing to Conduct a Proper Pain and Credibility Analysis.

Plaintiff argues that the ALJ's evaluation of Plaintiff's credible complaints of pain was not supported by substantial evidence in the record. In his opinion, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms are not credible to the extent that his limitations are inconsistent with the ALJ's RFC assessment. (Tr. 33.)

Credibility determinations regarding a claimant's subjective complaints rest with the ALJ, are entitled to considerable deference, and should not be discarded lightly. *See* Siterlet v. Sec'y of Health & Human Servs., 823 F.2d 918, 920 (6th Cir. 1987); Villarreal v. Sec'y of Health & Human Servs., 818 F.2d 461, 463 (6th Cir. 1987). However, the ALJ's credibility determinations must be reasonable and based on evidence from the record. *See* Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 249 (6th Cir. 2007); Weaver v. Sec'y of Health & Human Servs., 722 F.2d 313, 312 (6th Cir. 1983). The ALJ also must provide an adequate explanation for his credibility determination. "It is not sufficient to make a conclusory statement 'that an individual's allegations have been considered' or that 'the allegations are (or are not) credible.'" S.S.R. 96-7p, 1996 WL 374186 at *4 (S.S.A.). Rather, the determination "must contain specific reasons for the finding on credibility, supported by evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason

for that weight." *Id.*

When a claimant complains of disabling pain, the Commissioner must apply a two-step test known as the "Duncan Test" to determine the credibility of such complaints. *See Felisky v. Bowen,* 35 F.3d 1027, 1038-39 (6th Cir. 1994) (citing *Duncan v. Sec'y of Health & Human Servs.,* 801 F.2d 847, 853 (6th Cir. 1986)). First, the Commissioner must examine whether the objective medical evidence supports a finding of an underlying medical condition that could cause the alleged pain. *Id.* Second, if there is such an underlying medical condition, the Commissioner must examine whether the objective medical evidence confirms the alleged severity of pain, or, alternatively, whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged severity of pain. *Id.* In making this determination, the ALJ must consider all of the relevant evidence, including six different factors.[4] *See Felisky,* 35 F.3d at 1039–40 (citing 20 C.F.R. § 404.1529©). Courts are not required to discuss all of the relevant factors; an ALJ may satisfy the Duncan Test by considering most, if not all, of the relevant factors. *Bowman*

---

[4] These factors include the following:
    (1) the claimant's daily activities;
    (2) the location, duration, frequency, and intensity of the claimant's alleged pain;
    (3) precipitating and aggravating factors;
    (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the pain;
    (5) treatments other than medication that the claimant has received to relieve the pain; and
    (6) any measures that the claimant takes to relieve his pain.

*v. Chater,* 132 F.3d 32 (Table), 1997 WL 764419, at *4 (6th Cir. Nov. 26, 1997) (per curiam).

      Here, a review of the ALJ's decision reveals that the ALJ discussed most, if not all, of the relevant factors in his assessment of Plaintiff's condition. (Tr. 32-34.) The ALJ examined Plaintiff's daily activities, his treatments and his responses to those treatments, the clinical examination findings, and the physician statements of record. (*Id.*) Thus, the ALJ considered the relevant evidence.

      Moreover, in assessing Plaintiff's complaints of pain, the ALJ determined that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his alleged symptoms were not credible to the extent that they were inconsistent with his RFC. (Tr. 33.) Thus, the ALJ did not reject Plaintiff's subjective complaints altogether; rather, he determined that his RFC assessment adequately accounted for Plaintiff's limitations based on a careful consideration of the evidence. The ALJ specifically explained his reasons for finding that Plaintiff's allegations of pain were not fully credible:

> The claimant has a limited treatment history, including a stated preference for narcotic pain medication. For example, in January of 2008 he stated that only Lorcet helped his pain, and admitted to taking his mother's narcotics. (exh. 6F p4) The claimant also drove himself to his examination with Dr. Smith, and reported to him that he does ok when he takes Oxycontin. (exh. 10F p2) Despite this, in July of 2010 the claimant wrote that Percocet and Vicodin do not help at all. (exh. 15F p22) In addition, Dr. Slocum noted that the claimant refused both physical therapy and a neurosurgery consult. He also noted that there is [sic] no clear objective findings to support the level of narcotic use by the claimant. (exh. 18F p2) The claimant asserts that he did not attempt alternative procedures due to cost, but continued [to] purchase cigarettes to smoke. (exh. 20F p14) The record shows minimal objective findings, and treatment focused on narcotics, which shows that actual improvement is not the focus.

18

> Furthermore, the undersigned finds that the claimant's level of activities is not consistent with his asserted limitations. In this regard, even though claimant asserts that he cannot work, the record reveals that he has the capacity to perform most activities of daily living, such as preparing meals, cleaning, shopping, doing laundry, driving, and getting out of the house to visit his son. In addition, the claimant testified that he is able to lift 20 pounds and lives with and helps care for his disabled mother.

(Tr. 34.) Thus, the ALJ specifically compared Plaintiff's alleged symptoms to other evidence in the record, including Plaintiff's own testimony, and found that Plaintiff's subjective complaints were inconsistent with the objective evidence. This inconsistency is an appropriate basis for an adverse credibility finding. See *Walters v. Comm'r of Social Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) ("Discounting credibility . . . is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.") Accordingly, the ALJ adequately conducted a proper pain and credibility analysis, and Plaintiff's second assignment of error does not present a basis for remand.

## VI. CONCLUSION

For the foregoing reasons, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

s/ *Nancy A. Vecchiarelli*<br>U.S. Magistrate Judge

Date: January 15, 2014

**OBJECTIONS**

**Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the District Court's order.** See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).